property, and, ergo, in no way the rights incident to title, including that to immediate possession. This claim of damages is "independent of the action brought by plaintiff" (C. P. art. 376), and therefore can be urged only in a separate suit.

The judgment appealed from is therefore set aside in so far as it rejects defendant's reconventional demand for expenses incurred upon the property, and in so far as it decrees the eviction of defendant without these expenses having been first paid. It is affirmed in so far as it rejects the reconventional demand as based upon the said contract as a valid and enforceable contract. The case is remanded for trial in accordance with the views herein expressed. Plaintiff to pay the costs of this appeal.

MONROE, C. J., and LECHE, J., take no part.

=====

(76 South. 799)

No. 22135.

KIGHT v. VICKSBURG, S. & P. RY. CO.

(Oct. 29, 1917. Rehearing Denied Nov. 26, 1917.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT ⚖⟶107(1)—LIABILITY FOR INJURIES—DEFECTS IN TOOLS.

The failure to secure the head of a maul to the handle by a wedge was negligence, rendering an employer liable for injuries to an employé struck when the head of the maul flew off the handle, as the employer must furnish safe tools to work with.

2. MASTER AND SERVANT ⚖⟶180(1)—LIABILITY FOR INJURIES — NEGLIGENCE OF FELLOW SERVANT.

In an action admittedly under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]) for injuries to an employé other than the one using a maul caused by the head of the maul flying off the handle, the negligence of the employé using the maul where it was apparent to him that the head was not properly secured to the handle was not a defense.

3. DAMAGES ⚖⟶132(3)—EXCESSIVENESS—PERSONAL INJURIES.

Plaintiff, 26 years old, was struck on the head and rendered unconscious, but soon recovered consciousness. Plaintiff was uneducated, except that he could read and write a little bit, and had worked on a farm until within six or seven years, when he had worked as a laborer on railroads and at sawmills. After the injury he became slow and halting in his speech, his grasp on ideas became impaired, and his capacity for any sustained physical effort especially in the heat of the day was also impaired. He had lost from 15 to 20 pounds in weight. The medical testimony showed that a blow on the head producing unconsciousness was serious, and might and generally did sooner or later bring about epilepsy, insanity, or imbecility. *Held*, that a verdict for $15,000 was excessive, and should be reduced to $7,500.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Action by W. M. Kight against the Vicksburg, Shreveport & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant. Otis W. Bullock, of Shreveport, S. P. Jones, of Marshall, and T. P. Harte, of Douglas, Ariz., for appellee.

PROVOSTY, J. [1-3] Plaintiff was one of a gang of men in the employ of the defendant company doing repair work on its railroad bridge across Red river at Shreveport. The head of a maul that was being used some 15 feet above him slipped from the handle, and dropped upon him, striking him on his head. This maul head was of iron, and weighed 10 pounds; the handle was of wood. Usually for securing a maul's head to the handle a wedge is driven into the end of the handle that is inserted into the head so as to enlarge it and thereby make it fit tight. This had not been done in the present case, and plaintiff charges this omission as negligence on the part of the defendant company. There can be no doubt that the charge is well founded; nor of the liability of the defendant, since the employer must furnish

the employé safe tools to work with. Something is said about this defect having been apparent to the workman using the maul, and of the supposed negligence of this workman in using this maul in that condition being imputable to plaintiff, but, admittedly, the case comes under the federal Employers' Liability Law, and hence this supposed negligence of a fellow workman is not a defense. The main defense in the case is that plaintiff was not as seriously injured as he claims; that he remained unconscious but a little while recovering consciousness before removal to the sanitarium; that the skull was not fractured, and the brain not affected. The decided preponderance of the evidence shows that plaintiff did so recover consciousness. There was a scalp wound, but no sign of fracture. As to whether there was inner lesion the medical men differ. What the decision would have to be if the case depended solely upon the testimony of the medical men it would be hard to say. This testimony does show, however, that a blow on the head producing unconsciousness is a very serious matter; that it may have, and generally has, the effect of sooner or later bringing about epilepsy, insanity, or imbecility—singly or in combination. The evidence, outside of the medical, shows, we think, that serious consequences have followed in plaintiff's case.

He was in his twenty-sixth year, uneducated, save could read and write "a little bit, very little," had lived and worked on his mother's farm until driven by the advent of the boll weevil to seek employment elsewhere, and since then, for 6 or 7 years, had been working as a laborer on railroads and at sawmills. Attempt is made to show that he had always been of low mentality, sluggish in temperament, and slow of speech; but we conclude from the evidence that there had not been previous to this accident anything peculiar about him to differentiate him from the ordinary workman. Thereafter he showed pronounced signs of change. His speech has become slow and halting; his grasp on his ideas has become impaired; and in an even more marked degree his capacity for any sustained physical effort, especially in the heat of the day. He has lost 15 to 20 pounds in weight. Defendant attributes all this to malingering with a view to damages, and calls attention to the fact that plaintiff's testimony as appearing in the record shows no sign of mental impairment. But the mass of testimony bearing upon plaintiff's life since this accident cannot be explained away in that manner. It convinced the jury, and has convinced us, that by this accident plaintiff has been made a changed man, much for the worse, with the impending possibility of very much worse. While his testimony shows fair in the record, it must have appeared differently in the giving, for on cross-examination his 15 year old sister was asked: "He can talk now, can't he?" and she answered: "No, sir; have you not noticed the stoppage in his speech?"

This case was very fully and clearly presented in oral argument, and is strongly briefed on both sides, so that the work of giving here an analysis of the testimony would be nothing more practically than writing out what is contained in the briefs, and therefore very easy; but to what purpose? Only an appreciation of the facts is involved, and the voluminous testimony as a whole leaves not a moment's doubt as to the conclusions.

The jury fixed the damages at $15,000. We think the amount is excessive, and should be reduced to $7,500.

The judgment in this case is reduced to $7,500, and, as thus amended, is affirmed.