CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* PAYNE.

Opinion delivered January 26, 1920.

1. MASTER AND SERVANT—ASSUMED RISK QUESTION FOR JURY.—A carpenter, who was injured by the head of a maul used by his helper flying off, did not as matter of law assume the risk of such injury where the defective condition of the maul was not discoverable without taking the maul off the handle.

2. MASTER AND SERVANT—INSPECTION OF TOOLS.—A servant is bound to exercise ordinary care in the use of tools furnished him by the master; but no affirmative duty of inspection is required of him to discover defects in appliances that are not so open and obvious that the servant, in putting them to the use for which they are intended, would, in the exercise of ordinary care, naturally discover the defects.

3. MASTER AND SERVANT—DEFECTIVE TOOLS—ASSUMED RISK.—It is the duty of the master to exercise ordinary care to furnish the servant with appliances reasonably safe for the purpose for which they are intended; and where he fails to do so, the servant does not assume the risk of danger unless this defect is so open and obvious that any man of ordinary prudence would discover it on casual observation.

4. DAMAGES—EXCESSIVENESS.—A verdict for $5,000 for personal injuries *held* not excessive.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

1.  The evidence was not sufficient to justify the court in submitting to the jury the question as to whether or not the hernia was caused by the accident in which plaintiff was struck by a maul.  The only witness was Doctor Reed, and his testimony is not definite enough to justify the jury in saying the hernia resulted from the accident.  123 Ark. 124.

2.  The release was binding and prevented a recovery.  102 Ark. 616; 115 *Id.* 123; 119 *Id.* 95; 117 *Id.* 524.

3.  No negligence was proved warranting a recovery.  It requires no skill, experience or judgment to do such an act as putting a handle in a maul, and it was not incumbent on the master to have someone to examine the maul every few minutes to see whether the handle was on tight or not.  The plaintiff could readily ascertain the safety of the maul as a tool by examination and the master was not an insurer as to ordinary tools in everyday use.  66 S. E. 134; 199 S. W. 1074; 57 Ark. 503; 108 *Id.* 377; 130 *Id.* 486.

4.  The court erred in its instructions.

5.  The verdict is excessive.  147 N. W. 279, and cases *spra.*

*Fred A. Isgrig and Fred A. Snodgress,* for appellee.

1.  The evidence is sufficient to show that the hernia was caused by being struck by the maul.

2.  The instructions as to the release follow our law.  93 Ark. 589; 193 S. W. 791.

3.  Negligence was proved, and the verdict is not excessive.  170 N. W. 279; 8 R. C. L. 673; 78 S. W. 744; 5 Current Law 931; 85 S. W. 669; *Id.* 785; 78 Pac. 866; 9 N. E. 453; 27 Id. 607; 38 Id. 358; 13 Cyc. 123; 58 S. W. 923; 20 L. R. A. (N. S.) 458; 15 Id. 779.

Wood, J.  The appellee instituted this action against the appellant for damages for personal injuries.

The appellee, a carpenter and cabinet maker, was in the employ of the appellant at its shops in North Little

Rock. He was engaged in safety appliance work and was in charge of such work. He had an assistant, usually called a knocker or helper. Safety appliance work requires the climbing up on cars, the fixing of grab irons, running boards, and things of that kind. Appellee was engaged in putting steel plates as a partial equipment on one of appellant's cars, and while so engaged he was severely injured.

Appellee describes the circumstances of the occurrence as follows: "At the time I received my injuries, Dewey Dees was my helper. I went to the second car, and Jess Bargle was holding the chisel board. It was a long board about six or seven feet long that holds the bore, while Dees takes the rivet, you know, and cuts the rivets off. It is a chisel bar, made like a cold chisel. He cuts the rivets with a large maul, weighing about eight or ten pounds. Dewey Dees was striking it and Jess Bargle was holding it. The first or second lick he struck his chisel bar it broke, and we had to write a requisition in for a new one. I told Jess to take the old one back and return it back for a new one, and bring the new one back with you. In the meantime, well, there was a fellow worker right close by and he said, 'I will lend you mine, it is all right,' and to keep from detaining the company's work, I picked the bar up, which I had a right to do in the absence of my helper. Dewey Dees was cutting these steel rivets off about five or six licks to the rivet; he was putting in good licks, and the maul slipped off of the handle, and flew directly as he had made his full lick. He couldn't have done otherwise, and it struck me in my groin right in there. * * * Those mauls are made with a small side and a large side, and you put the handle on from the small side and wedge it over the wide side, and that flared the handle on from the large side, and wedged it on to the small side, and, therefore, as soon as that was used, it slipped off and flew off of the handle. I did not have an occasion to examine the handle at all because I had the utmost confidence in the man who put them on. Mr. Cleveland was

the man who saw after putting the handles on. He was in the employ of the Rock Island, and has been for a number of years. Mr. Cleveland had put this handle on the day before the maul came off and struck me. I did not examine the maul to see that the handle was in right or not. The fact of the business is if we had examined it we could not have told unless we took the maul off to see.''

Witness Dewey Dees testified on behalf of the appellant as follows: ''I quit the Rock Island in November, 1917, and have not worked there since. I have no connection with the Rock Island now. I was working for the Rock Island when Payne got hit with a maul. I was using the maul when it came off the handle and hit him. I never examined the maul. The wedge was still in the maul. The handle had just been put in there the day before. Payne and myself looked at the maul before we started to using it to see whether the handle was in the maul right or not. The maul had become loose once or twice before. The reason we examined it was because it had come loose and we examined it to see if it was on tight. Sometimes when they were new they would come off, so we looked at the maul, but it came off anyhow.''

Another one of appellant's witnesses testified in part as follows: ''I examined the maul and the handle as to how it was put on. The handle was properly put on, but the wedges came out. It does not make any difference from what side the handle is put in. The eye of the maul is the same size all the way through. This was a new handle. It frequently happens that the maul will slip off of the handle, not as soon as you put them on, but after they are used a while. The use of the maul sometimes causes wedges to fly out. You can use the iron or wood, either one, and they will come out.''

The appellee in his complaint alleged that the appellant had furnished the appellee with the maul which had been negligently and carelessly repaired and that he, appellee, did not know and could not have known that

the maul was in the condition described until after his injury.

Appellant in its answer denied all the material allegations of the complaint and alleged as affirmative defenses that the appellee assumed the risk and that appellant had settled with the appellee and had obtained a general release from appellee for all damages, if any, which he had sustained by reason of the injury.

The above are substantially the facts upon which the appellee predicated his cause of action and upon which he recovered judgment against the appellant in the sum of $5,000. From which is this appeal.

The court at the request of the appellant instructed the jury "that when the plaintiff undertook to work for the defendant he assumed the risk of any and all injuries ordinarily incident to the work and that might result, without negligence of the defendant, from the character of work he was doing."

The issues of negligence and of assumed risk were submitted to the jury under proper instructions and there was substantial evidence to sustain the verdict.

The testimony on behalf of the appellee tended to prove that the mauls were made with a small side and a large side; that the handle should be put on from the small side and wedged over the wide side; that when so put on the handle is flared so that it will not slip off, but that in the present case the handle was put on from the large side and wedged on to the small side which caused it to slip off the handle.

It was the duty of a man by the name of Cleveland, an employee of the appellant, to put on the handles.

The above testimony tends to prove that the handle of the maul was negligently put on and that this negligence was the proximate cause of the appellee's injury.

It can not be said as a matter of law that appellee assumed the risk. While the testimony of the appellee tends to prove that there was a large side and small side to the maul and that the handle was put on from the large side, when it should have been put on from the small side,

yet this was not discovered by him before he was injured, for the reason, as he states, he did not examine the maul to see whether the handle was put in properly or not because he had the utmost confidence in the man whose duty it was to look after the handles. His testimony further tends to prove that, even if he had examined the maul, he could not have told whether the handle was properly placed unless he took the maul off. This testimony that the defect could not have been discovered without taking the maul off was corroborated by testimony of one of the witnesses of the appellant to the effect that it did not make any difference from what side the handle was put on, as the eye of the maul is the same all the way through.

While one of the witnesses for the appellant stated that he and the appellee had examined the maul before using it to see whether the handle was in right or not, his testimony tended to show they did not discover any defect, that the handle was new and came off anyway.

The above testimony made it an issue for the jury as to whether the risk was one which the appellee assumed.

It cannot be said under the above testimony that the defective method of putting in the handle was so obvious that it could have been discovered by casual observation of those whose duty it was to use the same, or that it was such a defect that the servant in the use of it would naturally be the first one to discover it.

The servant is bound to exercise ordinary care for his own protection in the use of the tools furnished him by the master, but no affirmative duty of inspection is required of him to discover defects in appliances that are not so open and obvious that the servant in putting them to the use for which they are intended would, in the exercise of ordinary care for his own protection, naturally discover the defects. It is the duty of the master to exercise ordinary care to furnish the servant with appliances that are reasonably safe for the purpose for which they are intended, and where he fails to exercise such

care and thus negligently furnishes the servant with a tool or implement that is unsafe the servant does not assume the risk of the danger of using such tool unless the defect is so open and obvious that any man of ordinary prudence in going about his work would discover the defect upon a mere casual observation of the same.

In the case of *Chicago, Rock Island & Pac. R. R. Co. v. Smith,* 107 Ark. 512, the plaintiff was a car repairer and was injured by a defective eight-pound sledge hammer furnished him by the defendant while in the discharge of his duties. The hammer had an imperfect striking surface which prevented it from striking true, and caused it to glance off, and strike the plaintiff thereby injuring him.

In *Arkansas Central R. Co. v. Goad,* 136 Ark. 467, the plaintiff was injured by the defective condition of a lining bar used in raising the railroad ties for the purpose of spiking the rails to the ties. The bar furnished the plaintiff in that case was about five or six feet long with a small tip at the lower end with a knuck on the under side. A new bar has a long tip and turns up a little at the end. The bar furnished plaintiff was worn on the end which was inserted under the tie and the knuck was worn until it was round when it should have been flat. After putting the bar in position the plaintiff lifted up the tie supporting the rail, the bar slipped and plaintiff was injured.

In the above cases we held that it could not be said as a matter of law that the servant assumed the risk, for the reason that the defect was not one which the servant would naturally discover in the use of the tool by such casual observation as he would be required to make in the exercise of ordinary care for his own protection in performing the duties required of him.

The doctrine of those cases is applicable to the facts of this record, and it is ruled by them rather than by *Fordyce Lumber Co. v. Lynn,* 108 Ark. 377; *Arnold v. Doniphan Lumber Co.,* 130 Ark. 486, and other cases relied on by the appellant.

The present case is differentiated by the facts from the cases upon which appellant relies.

The appellant contends that there was no testimony tending to prove that the blow which the appellee received from the maul caused inguinal hernia, the injury of which he complains. But the appellee's testimony and the testimony of his family physician made this also an issue for the jury.

It could serve no useful purpose to set out and discuss in detail the testimony bearing on this issue.

We are also convinced that the nature of appellee's injury, as described by him, and also by his family physician, was such that the sum of $5,000 was not an excessive amount as compensation for the damages which appellee sustained.

There is nothing in the record to justify the conclusion that the verdict of the jury was the result of passion or prejudice. Nothing that would cause them to turn aside from a consideration of the just amount to which they believed appellee was entitled, when the evidence is given its strongest probative force in his favor, which we must give it. *Wells* v. *Sheppard,* 135 Ark. 466-70.

It was an issue for the jury under the evidence as to whether the appellee was bound by the release which he executed in favor of appellant for the consideration of $1. The court submitted this issue upon an instruction which declared the law in conformity with the decisions of this court in *St. L., I. M. & S. R. R. Co.* v. *Carter,* 93 Ark. 589; *C., R. I. & P. Ry. Co.* v. *Smith,* 128 Ark. 224.

We find no reversible error in the record, and the judgment is therefore affirmed.