## No. ——
### First Circuit

## L'ADMIRAULT v. POINTE COUPEE MOTOR COMPANY, INC.

(Dec. 6, 1927.   Opinion and Decree.)
(Jan. 5, 1928.   Rehearing Refused.)

*(Syllabus by the Editor)*

1. **Louisiana Digest — Automobiles — Par. 4 c.**

It is the imperative duty of one driving an automobile to slacken his speed when he sees a child on the side of the road waiting for a moving bus to pass before crossing. His failure to do so constitutes negligence, making him and his employer liable for damages.

2. **Louisiana Digest—Automobiles—Par. 9.**

$1000.00 is sufficient quantum of damages for perforated wound on side of nose, fractured arm and lacerated wound on right side of abdomen; which caused hemorrhages in the mucous membrane of the head and made the child totally unconscious for a period of fourteen days, then semi-conscious for an equal period, remaining in bed sixty days.

Appeal from the Parish of Pointe Coupee. Hon. W. C. Carruth, District Judge.

Action by Louis L'Admirault against Pointe Coupee Motor Company, Inc.

There was judgment for defendant and plaintiff appealed.

Judgment amended and affirmed.

Benton & Benton, Baton Rouge, attorneys for plaintiff, appellant.

Albin Provosty, New Roads, attorney for defendant, appellee.

MOUTON, J.   John L'Admirault, aged seven, was injured by an auto in a public road which leads south from New Roads. The auto which collided with the child was being driven by Frank Collins, an employee of defendant company. This suit is

brought by the father of the child for $470.65 in his own right, and in the further sum of $5,000.00 for the minor. Judgment was rendered in favor of plaintiff in the sum of $446.76 for medical attention to the child, and for $500.00 as damages. Plaintiff appeals.

A school bus was going south from New Roads, and the auto driven by Collins, was traveling in the opposite direction, northward towards New Roads. John, the injured minor, and his sister, about nine or ten years old, were standing on the side of the road. Collins says he saw these children on the side of the road; that the bus stopped between the "kids", as he calls them, and that when the bus was "pulling out to go" the boy broke from behind the bus to go across the road and was struck by his auto. He says as he saw the child he immediately applied the brakes, but without avail, as the accident was unavoidable.

It is clearly shown by the evidence of Collins and two other witnesses of defendant company, that the injured child was standing on the side of the road; that when the bus moved on, he tried to cross the roadway to the opposite side, running, and was struck when he had reached a point a little over the center of the highway.

Oscar Parent, also a witness for defendant, says the boy was holding a coupling on the bus and was runing behind it, that when he turned it loose, he cut across the road into the pathway of the auto, when he was injured. This statement is flatly contradicted by the testimony of Collins and two other witnesses for defendant, and must be eliminated from consideration in the decision of this suit. It must, therefore, be considered as an established fact that the child had emerged from behind the bus as it continued on its journey, and

that as he attempted to cross the highway, was injured as hereinabove stated.

Collins says that he had seen the injured child standing with his sister at a distance of about two hundred yards before he reached the bus. There can be no question from his evidence that he had seen them at or about that distance before he got to that point. They were standing there when he first saw them, and he was then traveling, according to his own testimony, between twenty and twenty-five miles an hour. Counsel for plaintiff propounded the following question to Collins:

"The answer says this: That up to the time that you actually saw said boy in front of your car on the public road, said boy had been completely screened from view by said bus, and seemed to have been waiting for said bus to pass by so that he might cross the road to go to his home, which was on the right hand side of the street looking to New Roads.

"Question: Is that the impression that you formed of those children as they stood there by the side of the road?

"Answer: Yes, sir.

"Question: You had that impression at the time you saw them?

"Answer: Yes, sir.

"Question: You are positive of that?

"Answer: Yes, sir."

Obviously, this statement of Collins has explicit reference to the time that he first saw the boy standing on the side of the road, because it would be absurd to say that the impression he had about the boy waiting to cross the road was formed when he suddenly came in contact with him from behind the bus while he was attempting to cross to the other side of the roadway. There can be no question that the boy appeared at the time to be standing on the side of the road as if waiting to cross to the other side. Such was unquestionably the impression Collins got from the apparent attitude of the child. The fact is that the appearance of the child on the side of the roadway created the same impression on Henry Hebert, an-

other witness of defendant, who was following the bus in an auto. Asked if he had seen the child before he ran across the road, he answered that he was then standing on the side of the road. "I think waiting for the bus to pass." From this statement of Hebert, and Collins himself, the driver of the auto that struck the child, the conclusion of fact unquestionably shows that the child, when standing on the roadside, was apparently waiting to cross over after the passage of the bus; and, it is equally certain that such was the impression created in Collins' mind. Although so impressed, Collins, according to his own testimony, did not in the least slacken the rate of speed at which he had been traveling, but continued at the rate of twenty miles an hour up to the time of placing his foot on the brake in his unavailing attempt to avert the accident. When he saw the child on the roadside and saw or felt that he was waiting for the moving of the bus to cross over, the imperative duty devolved upon him to immediately slacken the speed of his auto, or to have it under control, that he might avoid running over the child. In failing to do so, he was clearly negligent and at fault for which the defendant company was properly held liable in damages. The only remaining question is as to the amount of damages which should be allowed.

The proof shows that the child was knocked down unconscious, that when he was picked up from the road, his parents thought he was dead. It was shown by the physician who attended him, that he suffered a perforated wound on the side of his nose, a fractured arm, and a lacerated wound in the right side of the abdomen; that he had hemorrhages in the mucous membrane of the head and that he was totally unconscious for a period of fourteen days, then semi-conscious for an equal, if not a greater period of time.

After he regained consciousness it was shown by his mother that he remained sixty days in bed. The physician said that his nerve centers were impaired and that the Jacksonian type of epilepsy might follow with the possibility of a permanent physical and mental impairment. In cases showing no greater injury the Supreme Court has allowed the recovery of damages in amounts ranging from $1,000.00 to $2,000.00 or more. See Thompson vs. Com'l Nat'l Bank, 156 La. 481, 100 South. 688; Monge vs. New Orleans Ry. & Light Co., 145 La. 435, 82 South. 397; Knight vs. V. S. & P. Ry. Co., 142 La. 359, 76 South. 799.

The trial Judge allowed $500.00 in damages. This amount is inadequate and we feel constrained to raise it to the sum of One Thousand Dollars.

It is, therefore, ordered, adjudged and decreed that the amount decreed in the judgment appealed from be increased from the sum of $946.76 to the sum of $1446.76, and as amended it be affirmed with costs.

### DISSENTING OPINION.

LECHE, J. The demand herein is for damages, resulting from personal injuries inflicted upon plaintiff's eight-year-old son who was struck by an automobile driven by defendant's employee.

The accident happened a couple of miles out of New Roads on the public highway along False River, about three o'clock in the afternoon of December 3, 1925.

Plaintiff's boy was walking along the right hand side and near the edge of the road, in a westerly direction away from New Roads. A large bus used for the transportation of school children, going in the same direction passed him and immediately thereafter, he darted across the road to his left and ran into and was struck by the automobile of defendant, driven by one Frank Hollins, going in the opposite direction or towards New Roads.

He was severely injured and the question in the case, is whether Hollins could, by ordinary prudence have avoided the accident.

Hollins is a colored man, and Mr. Sentell, president of the defendant company, in whose employ he had been for about a year and a half before the trial of the case, and still was at the time of trial, credits him with a good reputation, as reliable, trustworthy and a careful chauffeur. He is, however, illiterate, and judging from his testimony, is of very ordinary intelligence. The contention of plaintiff is that Hollins saw the boy standing and waiting on the side of the road, in order that he might cross the road to go to his home, which was situated at a point about opposite the place where he was standing; that ordinary prudence suggested that Hollins should have apprehended and foreseen that the boy might, through childish lack of judgment and foresight, cross the road behind the school bus, without looking, and that it was Hollins' duty to guard against such a danger.

As proof of this lack of care on the part of Hollins, defendant propounded to Hollins, on cross-examination, the following question:

"Q. The answer says this: 'that up to that time that you actually saw the said boy in front of your car on the public road, said boy had been completely screened from view by said bus, and seemed to have been waiting for said bus to pass by, so that he might cross the road to go to his home, which was on the right hand side of the street looking to New Roads.' Is that the impression that you formed of those children as they stood there by the side of the road?
"A. Yes, sir.
"Q. You had that impression at the time you saw them?
"A. Yes, sir.
"A. You are positive of that?
"A. Yes, sir."

As a matter of fact, Hollins did not know the boy, nor the little girl who is said to have been with him. He did not know where they lived. He saw nothing to indicate that the boy intended to cross the road. This much abundantly appears from other parts of his testimony. The only thing supporting plaintiff's contention is the allegation in the answer, that the boy "seemed to have been waiting for the bus to pass by, so that he might cross the road to go to his home," and the answer of Hollins that such was his impression. Evidently, Hollins did not know the meaning of the word "impression" and if he did, then the statements which he made in regard to his appreciation of the situation when he collided with the boy are so contradictory as not to be worthy of belief.

The fact that Hollins did not know the victim of the accident, did not observe anything to indicate the boy's intention to cross the road, did not know that the boy's home was across the road from the place where the accident happened, all of which facts contradict the theory of the answer and were admitted without objection, and finally the statement of Hollins that he, Hollins, could not have avoided striking the boy to save his life, indicate that Hollins does not know the meaning of the word "impression" and had no idea that the boy would emerge from behind the bus and get in the way, in front of and in the path of his automobile.

An admission such as is made in defendant's answer, when shown without objection on the part of the opposite party, to be not only unsupported by the testimony but in direct conflict therewith, should not stand in the way of ascertaining the real truth and reaching a conclusion in conformity with all the facts in the case. Technicalities should not obstruct the fair administration of justice.

Oscar Parent, a white man, who was standing in front of his blacksmith shop situated a few hundred feet, in the direction of New Roads, from where the accident happened, absolutely disinterested in the case, and the only witness who saw the whole occurrence, says that the boy victim was holding on to the back of the bus as the bus passed his blacksmith shop, and when the bus reached the boy's home, the boy let go his hold, and darted across the road in the path of the automobile by which he was struck. This statement of Parent is partly corroborated by Henry Landry (p. 66), a young white man who was in an automobile following the bus.

This version of the accident bears all the earmarks of truth and reason and shows that the injury inflicted on plaintiff's son was unavoidable.

The judgment appealed from is in favor of plaintiff and does not seem to be supported by the testimony in the record. It should be reversed and plaintiff's demand rejected at his costs, and for these reasons, I respectfully dissent.

## ON APPLICATION FOR REHEARING.

MOUTON, J. In our original opinion we made reference to the question that counsel for plaintiff had put to Collins and which was answered by him as to whether, when he first saw the child, the latter seemed to have been "waiting for the bus to pass by so that he might cross the road to go to his house". His answer to that question was that he had been so impressed when he saw the children on the side of the road. In discussing this feature of the case, and which is an important one, counsel for applicant says, we failed, in our appreciation of this part of the evidence, to consider the fact that Collins is an illiterate, ignorant negro, and was merely answering affirmatively a leading question. In considering the contention so made on rehearing,

it is proper to observe that the record fails to show that counsel attempted in any way to have Collins explain whether he understood or not, the question which had been so propounded to him. A question or two would have shown whether Collins understood or did not understand the language which had been used to formulate the question. There are no words used in the question as we see it, that an ignorant or illiterate man could not understand, and there is nothing to indicate in the record that the language in which the question was couched, was beyond the comprehension of Collins. It must also be observed in connection with the foregoing, that the question propounded was taken from the answer of defendant company, which, doubtless must have obtained the information necessary to prepare it, from Collins, the driver of the car that caused the injury. The other complaints urged in the motion for rehearing are disposed of in our opinion, adversely to the contentions of the mover and we find no reason to change the conclusions reached by us in our original examination of the case. It would serve no useful purpose to indulge in a repetition of what we said originally.

The rehearing is therefore refused.