No. 3235

Second Circuit

WEBB v. V. S. & P. RY. CO. ET AL.

(December 19, 1928. Opinion and Decree.)
(January 21, 1929. Rehearing Refused.)
(February 25, 1929. Writs of Certiorari and Review denied by Supreme Court.)

Thatcher, Browne, Porteous & Myers; Barnett & Roberts, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendants, appellants.

WEBB, J. This action arises from an accident in which the plaintiff sustained serious injuries alleged to have resulted from the negligence of defendants, and they appeal from a judgment rendered against them in solido for ten thousand dollars.

The plaintiff was the tillerman on an aerial fire truck and was thrown therefrom by the truck being thrown against a telephone pole by the driver of the truck in avoiding colliding with a train operated by the Louisiana Railway & Navigation Company over the track of the Vicksburg, Shreveport & Pacific Railway Company at a crossing in the city of Shreveport.

The fire truck was wrecked in the accident and the City of Shreveport sued the defendants for damages, which case was decided by the Supreme Court, being No. 28867, City of Shreveport versus Vicksburg, Shreveport & Pacific Ry. Co. et al., 118 So. 872, on the docket of that court, holding that the defendants were guilty of negligence and liable for the damages to the truck, and in that case the same charges of negligence on the part of the defendants were made as in the present case, and the defenses were the same, and in reviewing the evidence presented in

the cited case, as to the proof of negligence, the Court said:

"The accident occurred about 11 o'clock at night at the intersection of Market street and the railroad tracks. An ordinance by the city requires that a flagman should be kept at this corner day and night. The complaint is that the flagman was not at his post as he should have been, and the defense is that the driver of the truck drove upon the track at a high rate of speed without stopping, looking or listening, and in the face of the flagman's signal to stop.

"There is, as usual, much conflict of testimony. The driver of the truck testifies that, whilst returning from a fire, he approached the crossing at a very moderate rate of speed; that there was no flagman on the crossing; that he saw no moving car until just as he reached the track, when it was too late to stop or back off with his heavy ladder-truck, 50 feet in length; that he then speeded up and swerved aside to avoid the oncoming car, which he did avoid, but in doing so the rear end of the truck struck the telephone pole and was wrecked.

"The driver is corroborated by one disinterested witness, and also by the brakeman of defendant's train, both of whom testified that the flagman was not at his post when the train and truck approached the crossing.

"On the other hand, the flagman testifies that he was at his post, and other witnesses testify to the same effect.

"But there is one physical fact which tends to show that the flagman was not at his post, and thus throws the preponderance of the evidence to plaintiff, and that fact is that when the driver of plaintiff's truck attempted to go over the crossing he was not the only one who did so; for an automobile occupied by a gentleman and lady attempted the crossing at the same time, and were well nigh caught by the approaching train. From which we conclude that to the occupants of that automobile no flagman was visible when they started to cross the track.

"Our conclusion from this and from the evidence as a whole is that the flagman was not at his post, and that this and not any recklessness on the part of the driver of the truck was the direct cause of the accident.

"For, since the city ordinance required that a flagman be at the crossing, the driver of the truck had a right to assume, when no flagman appeared, that no train was approaching, and if thereafter he perceived a train approaching, he was required to do no more than what then seemed to him best to avoid the collision. Roby vs. Kansas City Southern Railway Co., 130 La. 893, 58 So. 696, 41 L. R. A. (N. S.) 355; Taylor vs. Vicksburg, Shreveport & Pacific Ry. Co., 123 La. 768, 49 So. 518.

"Gibbens vs. New Orleans Terminal Co., 159 La. 347, 105 So. 367, has no application here, since in that case there was no ordinance requiring a gate or flagman at the crossing involved."

The present case was not tried at the same time as the cited case. However, the evidence offered in that case and reviewed by the Supreme Court, was introduced in the present case, and the only additional evidence on behalf of plaintiff was the testimony of two witnesses who were near the scene of the accident, which supported the contention that the flagman was not at his post, and on behalf of defendant the testimony of an engineer and plats made by him as well as photographs of the situation showing the view which the driver of the truck, as he approached the crossing, could have had of the track in the direction from which the train approached the crossing, which we do not think, however, added anything to the defense that the driver of the truck had not exercised ordinary caution in driving upon the track which was not developed under the evidence considered by the Supreme Court, or which could affect the finding that the defendants were guilty of negligence, and certainly if the driver of the truck was not guilty of negligence, the plaintiff here could not have been, as his place on the truck, where his duty was to hold the rear of the truck in line

with the front, was about forty feet from the place where the driver was sitting, and plaintiff's attention was required in handling the rear of the truck, and he could not have directed the manner in which the driver operated the truck, without neglecting his own duties.

Plaintiff, as well as defendant, complains of the amount of the judgment, the former having answered the appeal, praying that the amount of the judgment be increased to twenty-five thousand dollars, as originally demanded.

The evidence established that plaintiff had sustained a fracture of the skull which caused him to be confined in a hospital for about thirty days and had resulted in an impairment of his power to read and to speak to such an extent as to incapacitate him from returning to his employment, in which he received fifteen hundred dollars per year, and the condition not having materially improved for more than two years, it appears that his disability will in all probability be permanent.

The injury and the disability resulting therefrom was similar to that of the plaintiff in the case of Knight vs. V. S. & P. Ry. Co., 142 La. 357, 76 So. 799, and while in that case the Supreme Court reduced the judgment from fifteen thousand dollars to seventy-five hundred dollars, the evidence did not show that Knight was earning or capable of earning the wages which plaintiff here was receiving, and considering the difference in the earning capacity of the plaintiff here and that of the plaintiff in the cited case, we cannot say that the verdict of the jury was excessive, and the judgment appealed from is affirmed.

(See amended opinion on Application for Rehearing, 10 La. App. 234.)