Benny Lee **ROBERTS, Appellant,**

v.

**TEXAS & PACIFIC RAILWAY COMPANY,**
**Appellee.**

**No. 8030.**

Court of Civil Appeals of Texas, Texarkana.

Nov. 2, 1971.

Rehearing Denied Nov. 23, 1971.

Franklin Jones, Jr., Jones, Jones & Baldwin, Marshall, for appellant.

Mike Hatchell, Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, for appellee.

RAY, Justice.

Appellant (Plaintiff) Bennie Roberts, filed an action for money damages against Appellee (Defendant), Texas & Pacific Railway Company, under the Federal Employers' Liability Act (Title 45 U.S.C.A. § 51 et seq.). The action arose out of injuries sustained by appellant Roberts on August 14, 1969, while moving a 'straightening device' inside one of appellee's railroad cars. The case was tried to a jury in the District Court of Harrison County, Seventy-first Judicial District, and the court submitted thirteen special issues to the jury for answering. After deliberating most of a day, the jury reported itself deadlocked. The trial judge asked the jury if they had answered any of the special issues, and their answer was in the affirmative. The court received and examined the court's charge and the jury's answers to those issues which the jury had completed. The court received the partial verdict over objections of plaintiff's counsel, and determined that the partial verdict had absolved the defendant of any negligence which played a part in plaintiff's injuries. The jury had answered that the conduct of appellant Roberts was the sole cause of his admitted injuries. The court then entered a judgment that plaintiff take nothing, and thereafter the plaintiff's amended motion for new trial was overruled. Appellant Roberts seeks review of the case in this court on two points of error.

The first point of error states that the jury's verdict is contrary to the overwhelming weight and preponderance of the evidence, and point No. 2 concerns whether or not the trial court or the court of civil appeals has authority to review the findings of the jury.

The facts show that appellant Roberts went to work for appellee as a carman's helper in August of 1947, and that his injuries occurred on August 14, 1969, while he was working in one of appellee's railroad cars. On August 12, 1969, appellant was furnished for the first time a "straightening device" which was to be used in the straightening of bent portions of a box car. The aluminum device was about

10 feet tall, made in the shape of a "T", with rollers on the bottom of a metal plate which supported the "T" column. In the perpendicular column there was a hinging mechanism, which allowed the top half of the device to fold to the bottom. When the total column was in an upright position, the hinging mechanism was to be secured by placing the hasp on the top half of the column over the staple on the lower half of the column and inserting an object which would keep the hasp in place. To secure the hasp over the staple, another employee of appellee, Mr. Ford, placed a welding rod through the staple in such a manner as to keep the hasp in place. After the welding rod was in place on August 12, 1969, the straightening device was used to straighten one of appellee's box cars. Appellant Roberts had never worked with the device, nor had he been instructed in how to use it. The straightening device had been designed and manufactured by appellee in its railroad boiler shops in Marshall, and apparently was a new device. The device was left in an upright position at the end of the day on August 12th, with the welding rod in place. On August 13th the device was used, but appellant's duties required that he work out of town so that he was not around the device on that day. The next day, August 14th, appellant reported to the same box car for work, and welded in the top place of the car. Later a Mr. Clinkscales showed up and stated that he was ready for the device. Roberts at this point went to the office and inquired of Mr. Weber, a supervisor, as to what was to be done with the device. Weber replied that he intended to do away with the hinge and put it on a telescope and on a larger baseplate. Weber further stated that McIntosh had the fork truck, and that when he got through with it, that the device should be carried to the boiler shop in order to be worked upon. Appellant had not worked with the device on August 14th.

Upon receiving instructions from Mr. Weber to send the device to the boiler shops for modification, appellant Roberts returned to the car to take the device down. He told Ford to get upon the bench and that he, appellant, would roll the device over so that they could truck it slowly and lay it down. The device needed to be moved four or five feet toward Ford, so appellant started rolling the "T" toward Ford. As he started moving the device, he was watching the floor, and Ford hollered that the base was kicking out from under the device. Appellant took one step towards Ford before the device came unhinged and struck appellant. Between the time that appellant had last used the straightening device and the morning of August 14th, the welding rod had been removed for some unknown reason. Appellant did not know who removed the welding rod, and did not know that it had been removed when he started to roll the device towards Ford.

After appellant's injury a new device was constructed which had a base plate twice as large as the one moved by appellant. The wheels were one-half the size of the ones on the device that injured appellant, and there was no hinge in the middle of the device.

Mr. LaRue, a carman for appellee, testified that he had used the device the day it was completed but the device did not have a means of securing the hasp when it was brought to him. He used a bolt and nut in the hasp, which he felt was safe because the bolt would not come out of the hasp and staple.

Luther Weber, an employee of appellee for 41 years, supervised the construction of the device that injured appellant. He said the device was designed to be lowered by being unhinged; that it weighed around 150 lbs.; and that he thought the device was safe with a welding rod securing the hasp and staple. He further testified that the new device was made with a larger platform, so that a man could stand on it and it would be less susceptible to turning over when standing in an upright position. He considered that the device which hurt appellant posed a danger of being knocked

over if left unattended in the upright position, and he decided on a modification to the device thirty days before Roberts was hurt. Appellant never received any instructions on how to use the device from his supervisor, Luther Weber, although there is a rule fixing responsibility for the pursuit of safe work practices under supervisory personnel, such as Weber.

The jury found in its partial verdict that appellee railroad had not failed to furnish appellant with a safe place to work, nor had it failed to furnish him with a safe tool to perform his work. The jury further found that the failure of appellant Roberts to ascertain whether the hasp was securely fastened before attempting to roll the device which injured him was the sole proximate cause of his injuries.

The U. S. Supreme Court in Tiller v. Atlantic Coast Line Railroad Company, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (Virginia, 1943), decided that Chapter 45 U.S.C.A., Sec. 51, and the 1939 Amendment to Sec. 54 of this chapter abolishing assumption of risk doctrine authorize comparison of negligence instead of barring the servant from all recovery because of contributory negligence, and they leave for practical purposes only the question of whether the master was negligent, and whether that negligence was the proximate cause of the injury.

Much is made of the fact that appellant failed to ascertain that the hasp was securely fastened before attempting to roll the device which injured him. However, 45 U.S.C.A. § 53 provides the following:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any other provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be disminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." (1908)

■ The general rule is that where the employee's injuries are due solely to his own negligence, and where there is nothing to extenuate his conduct or confuse his judgment and his duty is as clear as its performance is easy, and he knows not only the imminent danger of the situation but how it can be averted, then 45 U.S.C.A. § 53 has no application, and there is no ground for a comparison of negligence on the part of the employer and the employee. Chesapeake & Ohio Ry. Co. v. Richardson, 116 F.2d 860 (Cir.Ct.App. Ohio 1941), 313 U.S. 574, 61 S.Ct. 961, 85 L.Ed. 1531, certiorari denied.

An employee does not assume the risk of employment, because 45 U.S.C.A. § 54 (1908) provides that: "In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

■ Appellant's points of error will be considered in reverse order and his second point of error is sustained. We hold that when an FELA case is tried in a state court, the state rules of procedure apply. Thus, when a case such as this is appealed, the Courts of Civil Appeals in Texas are

authorized to review both the liability facts and the damage facts, and if either is found to be contrary to the overwhelming weight and preponderance of the evidence, then the Court of Civil Appeals, after reviewing the facts in the case, has the right to substitute its judgment for that of the jury, to prevent gross injustice, and to remand the case to the trial court for a new trial. The U. S. Supreme Court stated in Chesapeake & O. R. Co. v. De Atley, 241 U.S. 310, 317, 36 S.Ct. 564, 566, 60 L.Ed. 1016–1021 (1916) that, "Although the present action was based upon a Federal statute, it was triable and tried in a state court; hence local rules of practice and procedure were applicable."

This court's analysis of Gulf, Colorado & Santa Fe Railroad Company v. Deen sustains appellant's position. In Gulf, Colorado & Santa Fe Railroad Co. v. Deen, 275 S.W.2d 529 (Tex.Civ.App. Eastland 1955) the Court of Civil Appeals held that *Deen's* action against the railroad under the Federal Employers' Liability Act for personal injuries inflicted by falling babbitt could not be sustained on the basis that the railroad was negligent in failing to furnish its employee proper tools for the job. Deen had been employed by the railroad as a coppersmith in its roundhouse in Brownwood for eleven years. The company kept there a babbitt melting pot which had cracked and was no longer usable. The railroad company had ordered a new pot. On the morning of July 12, Deen's foreman advised him there was an engine in the roundhouse which had to be repaired that day. Deen was working on that engine when the clerk of the railroad's store department told him the new pot was on the way to the roundhouse from the depot. Deen left the engine, moved the old pot to the floor and was attempting alone to dump the babbitt out of the pot when a blacksmith, Snow, saw Deen and volunteered to help. Snow and Deen tried to dump the pot "away" from them, but it was too heavy to tilt the pot forward without more help and they then pulled the pot toward them and the babbitt fell forward from the pot and broke Deen's leg. Deen did not ask for any help. Three times within the preceding three weeks, Deen, with the assistance of sufficient help, had manually removed the babbitt without anyone being injured. There were about sixty other men employed in Deen's department of the railroad shop. His employers were not advised that he was then going to do such work, nor how he proposed to do it, but Deen voluntarily attempted to do it alone and then, after Snow volunteered, he proceeded to remove the babbitt with only the assistance of Snow. Deen alleged it was necessary, if the engine was to be repaired that day, that there be no delay in installing the new melting pot, and that it was his duty to get the old pot off the furnace and remove the babbitt; that he moved the pot from the furnace to the floor; that the pot weighed about 250 lbs., and the babbitt and pot together weighed about 800 lbs; that to get the babbitt out of the pot it was necessary to raise the pot on its edge so the babbitt would fall out; that the railway company knew, or should have known, that the old pot had to be removed and the babbitt taken out, and therefore, it was its duty to furnish Deen with proper tools with which to take the babbitt out of the old pot. The jury found that the railway company failed to furnish Deen with proper tools to remove the babbitt, that such was negligence and a proximate cause of Deen's injury. The jury also found that Deen was negligent in failing to obtain additional help to do the work he was doing when he was injured, and that such was negligence and a proximate cause of his injury, and the jury further found that $39,000.00 would compensate Deen for his injuries, but such amount should be reduced 45% by reason of Deen's negligence. Judgment was rendered on the verdict awarding Deen $21,450.00 after reducing the $39,000.00 award by 45%. The railway company appealed. The Court of Civil Appeals reversed the trial court's judgment and rendered for the railroad, upon its determination that the jury's finding of negligence on the part of the railroad was not supported by the evidence. The Court of

Civil Appeals did not comment upon the assignment concerning weight and preponderance of evidence. The Supreme Court of Texas refused to grant a writ of error. Deen then appealed to the United States Supreme Court. The U. S. Supreme Court in Deen v. Gulf, Colorado & Santa Fe Railroad Co., 353 U.S. 925, 77 S.Ct. 715, 1 L.Ed. 2d 721 (1957) held in a per curiam opinion that "the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury." The U. S. Supreme Court reversed the judgment of the Court of Civil Appeals and remanded the case. When the case got back to the Eastland Court of Civil Appeals, that court held that the award of $39,000.00 to Deen for a compound fracture of the leg was excessive by $5,500.00, and ordered the trial court's judgment reformed if remittitur should be made, and if not, the case was to be remanded for a new trial. Gulf, Colorado & Santa Fe Railroad Co. v. Deen, 306 S.W.2d 171 (Tex.Civ.App. Eastland 1957). However, the railroad company had filed a motion to remand the case to the trial court without further proceedings in the Court of Civil Appeals. Its motion was based on the theory that the original Court of Civil Appeals' holding that there was no evidence of negligence of the railroad company included the lesser finding that the jury's finding of negligence was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

Subsequent to the second Court of Civil Appeals' opinion, both parties sought writ of error in the Texas Supreme Court. The application for writ of error was granted and the Texas Supreme Court in Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958), held that the first opinion of the United States Supreme Court did not foreclose the question of whether the verdict was against the great weight of evidence and reversed a second judgment of the Eastland Court of Civil Appeals and remanded the case to them with directions to exercise their independent evaluation of the question of "great weight and preponderance of the evidence."

Deen then petitioned the United States Supreme Court to mandamus the Texas Supreme Court to conform its decision to that of the U. S. Supreme Court, and the U. S. Supreme Court granted Deen's mandamus motion in Deen v. Hickman, 358 U.S. 57, 79 S.Ct. 1, 3 L.Ed.2d 28 (October, 1958). In the U. S. Supreme Court's second opinion in the *Deen* case, supra, the court stated: "On review, the Texas Supreme Court, 158 Tex. 466, 312 S.W.2d 933, 942, remanded the case to the Court of Civil Appeals, 'with directions * * * to adjudicate, upon its own independent evaluation of the evidence and wholly apart from the judgment of the Supreme Court of the United States, whether or not the jury finding of negligence of the defendant * * is so against the weight and preponderance of the evidence as to require a new trial in the interest of justice and, upon the basis of its said adjudication, to either affirm the judgment of the trial court or grant a new trial.'" The U. S. Supreme Court stated, "The determination of that issue was foreclosed by Deen v. Gulf, Colorado & Santa Fe Railway Co., supra. The motion for leave to file a petition requesting this Court to mandamus the Texas Supreme Court to confirm its decision to our mandate in that case is granted."

When the case was considered by the Texas Supreme Court for the second time in Gulf, Colorado & Santa Fe Railway Company v. Deen, 159 Tex. 238, 317 S.W. 2d 913 (1958), the Texas Supreme Court purported to conform its judgment with that of the U. S. Supreme Court and entered its order that Deen recover against the railroad company and its sureties the principal sum of $15,950.00, which represented a verdict of $39,000.00 reduced by 45% for Deen's contributory negligence and further reduced by the remittitur of $5,500.00.

This court is convinced that when the U. S. Supreme Court had the Deen case before it the first time, that it was passing

on a question of "no evidence" in relation to the evidence concerning the railroad's negligence in failing to supply its employee, Deen, with the proper tools to perform his job. The Eastland Court of Civil Appeals had reversed the trial court on the basis that there was "no evidence" to support the finding of the jury that the railroad was negligent, and that its negligence was a proximate cause of Deen's injuries. When the U. S. Supreme Court reviewed the first decision of the Eastland Court of Civil Appeals, it was reviewing a law question, and in determining that law question, the U. S. Supreme Court had to see if there was any evidence in the record concerning the railroad's negligence. Having found in the record evidence of the railroad's negligence, it could only do one thing, and that was to reverse the "no evidence" finding of the Eastland Court of Civil Appeals and remand the case to that court. Since the U. S. Supreme Court had determined that the record included some evidence of negligence on the part of the railroad, it automatically meant that the railroad was liable to Deen less the amount of Deen's contributory negligence under the comparative negligence doctrine. Because the jury had already determined the amount of Deen's contributory negligence, the only thing left for the Court of Civil Appeals to do was to approve the judgment of the trial court.

Appellee states that, since the Eastland Court of Civil Appeals had required Deen to file a remittitur of $5,500.00 and because the U. S. Supreme Court did not specifically rule on the remittitur, this meant the U. S. Supreme Court was saying in the last Deen case that the Court of Civil Appeals could review "damage facts" but not "liability facts." We cannot agree with appellee because our analysis reflects that the U. S. Supreme Court in the Deen cases determined only a question of law relative to "no evidence." Having decided that question against the railroad, it meant that Deen was entitled to recover the amount of money determined by the jury as reviewed by the Court of Civil Appeals.

Likewise, Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946) involved the question of "no evidence" and the U. S. Supreme Court reviewed this question of law and found sufficient evidence of the railroad's negligence as would require the case to be reversed.

The Constitution of the State of Texas, in Art. V, Sec. 6 (as amended 1891) Vernon's Ann.St. provides in part the following: "Said Court of Civil Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law. Provided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error." It is our considered opinion that the U. S. Supreme Court decisions in the *Deen* cases, supra, in no way declared unconstitutional that portion of the Texas Constitution which gives the Courts of Civil Appeals the right to review questions of fact presented to them on appeal. First of all, the question was not squarely presented to the U. S. Supreme Court; and secondly, the decisions by the U. S. Supreme Court do not state in any language that it was their purpose or construction that such portion of the Texas Constitution was to be declared in violation of any provision of the U. S. Constitution. We believe that on any issue that would have required the U. S. Supreme Court to nullify a portion of the Texas Constitution, the U. S. Supreme Court would have specifically pointed out which portion of the State Constitution was a nullity, what portion of the U. S. Constitution was violated by the State Constitution, and the reasons for so holding. None of these were done.

Prior to the *Deen* cases, supra, other courts felt they had a right to review fact questions on appeal and to reverse the trial courts when the verdict of the jury

was so against the great weight and preponderance of the evidence as to be manifestly unjust. In St. Louis-San Francisco Railway Company v. King, 278 P.2d 845 (Sup.Ct.Okl.1954), the court held in an FELA case the following: "Under Sec. 56 of F.E.L. Act, supra, plaintiff had the right to sue in a Federal District Court or in a State Court. Miles v. Illinois Central R. R. Co., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104. Plaintiff having chosen courts of this state, the action must be prosecuted in accordance with our modes of procedure. Minneapolis & St. Louis R. R. Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961, Ann.Cas.1916E, 505, L.R. A.1917A, 86 Okl.Anno.Conf.Laws, A.L.I., Sec. 592, Pocket Supp.; and we have authority to examine the record, weigh the evidence and determine whether the verdict and judgment should stand or whether it should be set aside and the cause retried, Parthun v. Elgin, J. & E. R. Co., 325 Ill. App. 408, 60 N.E.2d 464, and cases cited therein." The Oklahoma Court further stated in the *King* case, supra, that: "The utilization of State Courts for the vindication of Federal rights does not require that established state procedure be remodeled or that their customary modes of administering justice be restricted. See Mooney v. Denver & R. G. W. R. Company, 118 Utah 307, 221 P.2d 628, and cases cited."

The appellate court in Illinois in Parthun v. Elgin, J. & E. Railway Company, supra, held that it had authority to weigh the evidence on appeal and determine whether the verdict should stand or whether it should be set aside and the cause retried, since the initial action was prosecuted in the state courts of Illinois. The Illinois court points out the distinction between cases tried in the state courts and those tried in the federal courts under the Federal Employers Liability Act, and concludes that if the case is tried in state court, then state rules of procedure apply, thus giving State Appellate Courts the right to review the weight of the evidence on appeal. On the other hand, if the case is tried in a Federal District Court, the Federal Rules of Civil Procedure apply and the Federal Circuit Courts of Appeal have no authority to review the weight of the evidence when the case is appealed to them. This conclusion is confirmed by the action in Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, (1944) in which the U. S. Supreme Court held the Federal Circuit Courts of Appeal do not have the right to review the sufficiency of the evidence once a jury determination has been made of the facts in the trial court.

We are not unaware of the holding in Hullum v. St. Louis Southwestern Ry. Co., 384 S.W.2d 163 (Tex.Civ.App.Tyler, 1964, writ ref., n. r. e.), cert. den. 382 U.S. 906, 86 S.Ct. 244, 15 L.Ed.2d 159, reh. den., 382 U.S. 949, 86 S.Ct. 387, 15 L.Ed.2d 357, but we believe that the Court of Civil Appeals made an erroneous analysis of the *Deen* cases, supra, and failed to distinguish between the cases interpreting the latitude of review of Federal Circuit Courts of Appeal under Federal Procedural rules and those tried in State Courts that are appealed under State rules. The Court was, however, quick to add that it had reviewed "all of the evidence in the case and [had] concluded that the findings of the jury are not so against the weight and preponderance of the evidence as to be manifestly wrong and unjust." We believe the Court of Civil Appeals reached the right conclusion because of the facts in the case and not because of its analysis of the law. Prior to the Deen cases, it had already been decided in Texas that the Courts of Civil Appeals could review the evidence on appeal to determine whether the finding of the jury was against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. The Waco Court of Civil Appeals in Missouri-Kansas-Texas Railroad Company of Texas v. Webb, 229 S.W. 2d 204 (Tex.Civ.App.Waco, 1950, wr. ref'd, n. r. e.), stated: " * * * We have no hesitation whatsoever in saying unequivocally that in our deliberate opinion the amount of recovery adjudged to appellee by the trial court was not only grossly ex-

cessive but the findings of the jury on the damage issues, when considered together on a percentage basis, were and are so clearly against the overwhelming weight and preponderance of the evidence in its entirety to be manifestly wrong. Accordingly, the Constitution and laws of Texas impose upon this court a solemn obligation to set aside such findings on account of the insufficiency of the evidence to sustain the same. Constitution of Texas, Art. 5, Sec. 6, Vernon's Ann.St.; Art. 1820 of Vernon's Tex.Civ.Stat.; Choate v. San Antonio & A. P. Railway Company, 91 Tex. 406, 44 S. W. 69; Insurance Company of North America v. Cangelosi, Tex.Civ.App., 217 S. W.2d 888, Pts 1–3 and authorities."

Appellee argues that a difference exists in the cases that hold that intermediate appellate courts have the right to review the facts concerning damages as distinguished from the facts concerning liability. There is no justification for such distinction, and we see none. In Texas & Pacific Ry. Co. v. Baldwin, 25 S.W.2d 969 (Tex.Civ.App. Eastland 1930); affirmed by The Tex.Sup. Ct.; Texas & Pacific Railroad Company v. Baldwin, 44 S.W.2d 909 (Comm.App.1932), the Eastland Court of Civil Appeals had before it an FELA case concerning the sufficiency of the evidence to support the findings of the jury on liability issues. The court took it upon itself to review the liability issues and concluded that the evidence was sufficient to support the jury findings that the railroad was negligent in operating its caboose through the railroad yards at night without a light or switchman in front of the caboose to warn an employee of danger.

Since we have concluded that the Courts of Civil Appeals have the right to review all the facts in an FELA case tried in the Texas Courts, we shall proceed to examine the record in this case to determine whether or not the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.

The facts show that the straightening device, which we have described in some detail in this opinion, was manufactured in the car shops of appellee railroad and furnished to appellant for his use in straightening appellee's railroad box cars. The testimony is clear that, as long as the hasp on the hinging mechanism was secured in place over the staple, the device was relatively safe except for the small platform and big rollers upon which the "T" column was affixed. A further review of the testimony shows that because the platform upon which the "T" column was affixed was so small and because it was on large rollers, it was likely to tip over when pushed by an employee. The testimony establishes that if the hasp was not securely fastened over the staple, then the straightening device would be dangerous and would do exactly what it did on the day that appellant Roberts started to move the instrument. As he started to move the straightening device, the column tipped over in appellant's direction because the platform upon which the "T" column was fastened was unstable in that it was too small and on rollers larger than necessary. Because the hasp was not securely fastened over the staple on the day in question, the "T" column came unhinged and struck the appellant causing his injuries. The evidence shows that appellant had not removed the welding rod which had previously secured the hasp over the staple. The testimony of L. G. Weber shows that he was an employee of appellee and had supervised the design and construction of the device and that when the device left the fabrication shop it left with a nut and bolt to secure the hasp and staple. His testimony also shows that about 30 days before appellant was injured he had concluded that the device needed to be modified. Appellant was removing the device on the occasion for the purpose of taking it to the shops for modification, which included a larger base with smaller wheels and a column that telescoped instead of being hinged. The record reflects that safety rule 18 charged the supervisor with the responsibility of bringing about safety in the performance of the duties of those employees working under his supervision.

Mr. Weber's testimony reveals that he did not instruct appellant on the use of the device.

■ In Chicago, R. I. & P. Railway Company v. Payne, 141 Ark. 617, 217 S.W. 810 (1920), the court held in an FELA case that, "The servant is bound to exercise ordinary care for his own protection in the use of tools furnished him by the master, but no affirmative duty of inspection is required of him, to discover defects in appliances that are not so open and obvious that the servant, in putting them to the use for which they are intended, would in the exercise of ordinary care for his own protection naturally discover the defects. It is the duty of the master to exercise ordinary care to furnish the servant with appliances that are reasonably safe for the purpose for which they are intended, and where he fails to exercise such care, and thus negligently furnishes the servant with a tool or implement that is unsafe, the servant does not assume the risk of the danger of using such tool, unless the defect is so open and obvious that any man of ordinary prudence, in going about his work, would discover the defect upon a mere casual observation of the same." In that case the plaintiff had suffered personal injuries when a steel maul came off its handle and struck the plaintiff because the wedge which secured the maul to the handle had come out of the handle. See Kight v. Vicksburg, S. & P. Ry. Co., 142 La. 357, 76 So. 799 (1917) in which the court held that the failure to secure the head of a maul to the handle by driving a wedge in the end of the handle was negligence, making the employer liable to the employee struck when the head of the maul flew off the handle. Appellee owed appellant a continuing non-delegable duty to furnish him a safe tool with which to work. Texas & Pacific Ry. Co. v. Archibald, 170 U.S. 665, 18 S.Ct. 777, 42 L.Ed. 1188 (1898). This is a continuing duty and is ever present such that while the straightening device might have been safe on August 12, 1969, when the welding rod was in place, it was the duty of appellee to furnish appellant Roberts with a safe tool on August 14, 1969. This is particularly true in this case since appellant had not been instructed on the safe use of the device. The duty of making proper inspections and tests of appliances is also non-delegable, and may not be discharged by seeking to delegate it to the employee who is injured through use of the device. 53 Am.Jur.2d, Master and Servant, Sec. 161, p. 225; Sec. 322, p. 343. Further, the duty of inspection could not be delegated to appellant because such delegation would impose upon him the assumption of risk from the negligence of his employer and the doctrine of assumption of risk was abolished by the 1939 amendment to the Federal Employers Liability Act 45 U.S.C.A. § 54.

■ We recognize the principles that a jury verdict should be overturned on appeal only in the arrest of instances. However, in this case, there can be no doubt but what the negligence of the appellee "played a part" in the injuries of appellant. We have thoroughly reviewed the record in this case and find that the evidence, when considered in the light most favorable to the jury verdict, does not support the jury verdict and is so overwhelmingly against the great weight and preponderance of the evidence as to be manifestly unjust. It is obvious that the straightening device, designed as it was, would not be safe in the position in which appellant found it unless the hasp was securely fastened to hold the column in an upright position. It is our conclusion that the overwhelming weight and preponderance of the evidence in this case shows that appellee failed to furnish appellant with a safe tool for his work, and that this was negligence which at least played a part in appellant's injuries. Accordingly, the finding of the jury that the appellant's conduct was the sole cause of his injuries is likewise contrary to the overwhelming weight of the evidence. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) reh. den. It may be that the appellant was contributorily negligent, and that appellee

would be entitled to a reduction in damages if the jury should so find under the comparative negligence doctrine, but we leave that to the jury on a re-trial of this case. We hold that the evidence in this case is insufficient to support the verdict of the jury, and is so overwhelmingly against the great weight and preponderance of the evidence as to be manifestly unjust, and that the case should be remanded to the trial court for a new trial. Appellant's first point of error is sustained.

Reversed and remanded.